# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

OLANDER R. BYNUM, )
)
Plaintiff, )
)
v. ) 1:15CV960
)
KATY POOLE, )
)
Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Plaintiff Olander R. Bynum's motion for summary judgment. (Docket Entry 30.) Defendant Katy Poole has filed a response. (Docket Entry 52.) For the reasons stated herein, the Court will recommend that Plaintiff's motion for summary judgment be denied.

## BACKGROUND

Plaintiff, a *pro se* prisoner and devout Muslim, filed this action against Defendant Poole alleging a constitutional violation of his religious rights. (*See generally* Complaint, Docket Entry 2.) Plaintiff contends that being a Muslim requires him to attend Jumah Service, a prayer service. (*Id.* at 3.) He asserts that while at Scotland Correctional Institution ("SCI"), Jumah Service, a Muslim holiday, was hosted on Fridays, but on Friday, April 3, 2015, Jumah Service was canceled. (*Id.*) Plaintiff alleges that Defendant Poole, a prison administrator, approved the cancelation of all non-Christian religious services, including Jumah Service. (*Id.*) Further, Plaintiff alleges that he filed three grievances on three separate occasions and never received a response. (*Id.* at 2-3.) As a result, on November 16, 2015, Plaintiff filed this action pursuant

to 42 U.S.C. § 1983 alleging Defendant Poole violated his religious rights while at SCI. (*Id.*) The Clerk entered an entry of default against Defendant Poole for failing to file an answer or otherwise respond to Plaintiff's Complaint. (Docket Entry 11.) The Court later granted a motion to set aside the entry of default (Docket Entry 22) and Defendant Poole subsequently filed an answer asserting several defenses against Plaintiff's claim. (Docket Entry 23.) Shortly thereafter, Plaintiff filed a motion for summary judgment alleging Defendant Poole violated his Eighth Amendment, Equal Protection, and Due Process Clause rights by canceling Jumah Service. (Docket Entry 30.) In response, on February 20, 2017, Defendant Poole filed a motion to dismiss and strike Plaintiff's motion for summary judgment and in the alternative, an extension of time to respond. (Docket Entry 32.) In her motion, Defendant Poole asserted that Plaintiff's summary judgment motion failed to comply with Local Rules 7.2, 7.3, and 56.1, and that Plaintiff filed his summary judgment motion prior to the close of the discovery period. (*Id.* at 1.) The Court ruled upon Defendant's motion. (Text Order dated 6/8/2017.) Shortly thereafter, Defendant Poole filed another response in opposition to Plaintiff's motion for summary judgment. (Docket Entry 52.)

## DISCUSSION

Plaintiff has moved for summary judgment in this matter. (Docket Entry 30.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing

*Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson*, 477 U.S. at 248-49.

Here, Plaintiff contends that Defendant Poole "admitted to canceling Jumah Service[,] [thus] violating [Plaintiff's] civil rights." (Docket Entry 30 at 1.) More specifically, Plaintiff contends:

> Superintendant Katy Poole did admit she cancelled Jumah Service on [April 3, 2015]. Petitioner was clearly denied freedom of religion. Freedom of Religion is provided to prison inmates by [Eighth Amendment, Equal Protection and Due Process Clauses]. Petitioner argues that Defendant(s) did not even think of canceling Christian service on that same date. Petitioner now

3

> argues, no rational reason exist for prison staff's differential treatment of prison inmate class.

(*Id.* at 1-2.) Defendant Poole argues that Plaintiff's motion for summary judgment should be denied for several reasons:[1] (1) Plaintiff did not exhaust his administrative remedies; (2) single or isolated incidents do not place a substantial burden on an inmate's exercise of his religion; (3) Plaintiff does not state a claim for supervisory liability; (4) Defendant Poole is entitled to qualified immunity; (5) Defendant Poole is entitled to Eleventh Amendment protection as to money damages in her official capacity; and (6) Plaintiff should not be awarded punitive damages. (Docket Entry 52 at 9-18.) For the reasons stated herein, Plaintiff's motion should be denied.

### I. Failure to Exhaust Administrative Remedies

Defendant Poole contends that Plaintiff failed to exhaust his administrative remedies prior to filing the instant action. (*Id.* at 14-16.) The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates to properly exhaust administrative remedies before filing civil actions challenging the conditions of their confinement. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It is well-settled by now that Section 1997e's

---

[1] In her response brief, Defendant Poole reasserts similar arguments previously raised regarding Plaintiff's compliance with the local rules when filing a summary judgment motion. (Docket Entry 52 at 8-10.) The Court previously addressed this issue in a Text Order. (*See* Text Order dated 06/08/2017.) Having recommended herein other grounds of denying Plaintiff's motion for summary judgment, the undersigned will not further address this issue.

4

exhaustion requirement is mandatory. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 90-91 (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676-77 (4th Cir. 2005) (citing *Porter*, 534 U.S. at 524).

The North Carolina Department of Public Safety ("NCDPS") has a three-step Administrative Remedy Procedure ("ARP") which governs the filing of grievances in each of its correctional facilities.[2] (*See* ARP Manuel, Docket Entry 23-1; *see also Moore v. Bennette*, 517 F.3d 717, 721 (4th Cir. 2008)). The ARP first encourages inmates to attempt informal communication with responsible officials at the facility where the problem arose. ARP § .0301(a). If informal resolution is unsuccessful, the ARP provides that "any aggrieved inmate may submit a written grievance . . . ." *Id.* § .0310(a)(1). If the inmate is not satisfied with the decision reached at the above-described step one of the grievance process, he or she may request relief from the facility head. *Id.* § .0310(b)(1). If the inmate is not satisfied with the decision reached at the second step then he or she may appeal to the secretary of public safety through the inmate grievance examiner ("IGE"). *Id.* § .0310(c)(1). The decision by the IGE or a modification by the secretary of public safety constitutes the final step of the Administrative Remedy Procedure. *Id.* § .0310(c)(6).

A review of Plaintiff's complaint and the exhibits attached to Defendant Poole's opposition brief demonstrates that Plaintiff did not exhausted his administrative remedies.

---

[2] The court takes judicial notice of this established procedure of the NCDPS as a matter of public record. Fed. R. Evid. 201(1).

The NCDPS grievance procedure is comprised of three distinct steps. *Moore*, 517 F.3d 717 at 721. Defendant Poole does not dispute Plaintiff's allegations that he engaged in step one of the grievance process. For instance, on May 18, 2015, prison officials accepted a grievance by Plaintiff (Grievance No. 4860-15-0653) alleging that the intentional cancelation of Jumah Service was a direct violation of his freedom of religion. (Docket Entry 2-1.) Thereafter, prison officials responded informing Plaintiff that the service was canceled in error, and that management was notified "to ensure that all religious services are held according to policy." (Docket Entry 23-2.) The response also included Plaintiff's signature and a check mark that indicating that Plaintiff agreed with the grievance response. (*Id.*) The record, however, does not further indicate that upon completing Step 1 of the grievance process and receiving a response from prison officials, Plaintiff further appealed to Step 2. In fact, Defendant Poole and several prison officials, including the Grievance Officer at SCI, contend that Plaintiff did not appeal to Step 2. (Shaquanna Wall Aff. ¶ 18, Docket Entry 52-4; Katy Poole Aff. ¶ 22, Docket Entry 52-6; Charlie Locklear Aff. ¶ 20, Docket Entry 52-6.) It was not until after this lawsuit was filed did Plaintiff submit another grievance on December 28, 2015. (Wall Aff. ¶ 20; *see also* Docket Entry 52-4 at 12.)[3] Even if Plaintiff wanted to appeal at this point in the proceeding, "he may not exhaust (or attempt to exhaust) his administrative remedies during the pendency of a lawsuit." *Thomas v. Slater*, No. CA 9:10-0028-DCN-BM, 2010 WL 4822407, at *3 (D.S.C. Nov. 3, 2010) (unpublished), *report and recommendation adopted*, No. CA 9:10-0028 DCN, 2010 WL 4823071 (D.S.C. Nov. 22, 2010) (citation omitted); *see also Seamons v. Guise*,

---

[3] Plaintiff did submit a grievance in June 2015 that was rejected because his current grievance on the same issue had not completed Step 2. (*See* Docket Entry 52-4 at 10.)

6

No. 3:16-CV-649-FDW, 2017 WL 190101, at *2 (W.D.N.C. Jan. 17, 2017) (unpublished) ("The law is settled that a plaintiff must exhaust administrative remedies before filing a claim, and a prisoner is not entitled to exhaust administrative remedies during the pendency of an action."). Having failed to exhaust his administrative remedies by completing all three steps required by the ARP, Plaintiff's motion for summary judgment should be denied.

II. <u>Substantial Burden upon Prisoner's Constitutional Right to Free Exercise of Religion</u>

Notwithstanding Plaintiff's failure to exhaust his administrative remedies, Defendant Poole also asserts that Plaintiff's motion for summary judgment should be denied because no substantial burden has been placed on his ability to practice his religion. (Docket Entry 52 at 11-12.) Plaintiff alleges that on Friday, April 3, 2015, Jumah Service was intentionally canceled whereas Christian services were never canceled. (Docket Entry 30 at 1-2; Docket Entry 2 at 3.) Further, he argues that cancelation of Jumah Service violated his constitutional right to free exercise of religion. (Docket Entry 30 at 2.) Inmates have First Amendment constitutional protection even if convicted and imprisoned, including the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Applying a more stringent protection, the Religious Land Use and Institutionalized Person Act ("RLUIPA") provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person" serves to further a compelling government interest and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. In order to determine whether there has been a violation under RLUIPA, Plaintiff "bears the burden of

7

establishing a prima facie case, showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged conduct substantially burdens that exercise." *Krieger v. Brown*, 496 Fed. App'x 322, 324 (4th Cir. 2012).

Following the Supreme Court's guidance, the Fourth Circuit has held that "a substantial burden on religious exercise occurs when a state or local government, through act or omission, put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (internal quotations and citations omitted). In contrast, "[n]o substantial burden occurs if the government action merely makes the religious exercise more expensive or difficult, but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion." *Dellinger v. Clarke*, 172 F. Supp. 3d 898, 902-03 (W.D. Va. 2016) (internal quotations and citations omitted). Upon Plaintiff establishing a prima facie case, the burden shifts to the government to show "that the limitation on the plaintiff's religious exercise is the least restrictive means of furthering a compelling government interest." *Krieger*, 496 Fed. App'x at 324. "In assessing [whether there is a substantial] burden, courts must not judge the significance of the particular belief or practice in question." *Lovelace*, 472 F.3d at 187 n.2.

Defendant Poole correctly contends that the incident Plaintiff alleges does not put a substantial burden on Plaintiff's exercise of religion. Plaintiff makes a blank assertion that his religious rights were violated by Defendant Poole when Jumah Service was canceled at SCI on April 3, 2015. (Docket Entry 30 at 1-2.) Although the Court will not inquire as to the necessity of attending Jumah Service as it pertains to being a devout Muslim, the Court will not view a "single or isolate[d] incident" as placing a substantial burden upon Plaintiff's exercise of

8

religion. *Davis v. Doe*, 1:14CV373, 2014 WL 1835853, at *2 (M.D.N.C. May 8, 2014) (unpublished) (citing *Brown v. Graham*, 470 F. App'x 11, 15 (2d Cir. 2012)). Plaintiff does not alleged that this has occurred on several occasions. In fact, in his Complaint, Plaintiff states that Jumah Service was held every Friday in 2015, except April 3, 2015. (Docket Entry 2 at 3.) At most, the one-time cancelation of Jumah Service is an inconvenience. *Dellinger*, 172 F. Supp. 3d at 902-03.

In addition, Plaintiff does not demonstrate that "he was pressured to modify his behavior and to violate his beliefs when" Jumah Service was canceled. *Davis*, 2014 WL 1835853, at *2. First, the record indicates that Defendant Poole did not become aware of the cancelation of Jumah Service until after the scheduled service. (Poole Aff. ¶ 14.) Second, the Department of Supervision and the Chaplain at SCI would have been responsible for organizing and facilitating the inmates' religious services. (*Id.* ¶ 13.) Third, Jumah Service was not canceled intentionally by Defendant Poole or any staff member, because on April 3, 2015, the chaplain and program staff were off for Good Friday, a State holiday. (*Id.* ¶¶ 14, 20.) Moreover, the record indicates that Defendant Poole not only had nothing to do with the cancelation of Jumah Service, but also had no prior knowledge of such conduct. (*Id.* ¶ 15.) Therefore, Plaintiff has not proven a prima facie case that a substantial burden was placed on his ability to exercise his religion. Thus, Plaintiff's motion for summary judgment should be denied.

### III. Supervisory Liability

Alternatively, and to the extent alleged, Defendant Poole argues that Plaintiff fails to state a claim for supervisory liability against her. (Docket Entry 52 at 12-13.) Defendant Poole

may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable to § 1983 suits. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
>
> (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Plaintiff's complaint lacks any allegations sufficient to assert supervisory liability against Defendant Poole. Even with the most liberal reading, Plaintiff, at most, asserts Defendant Poole had knowledge of the incident occurring on April 3, 2015. (Docket Entry 2 at 4.) If true, knowledge of this single incident fails to show "continued inaction in the face of documented widespread abuses," which is necessary to establish deliberate indifference. *Shaw*, 13 F.3d at 799 (internal quotations omitted). Thus, Plaintiff's claim of supervisory liability against Defendant Poole fails.

IV. Qualified Immunity

Summary judgment in favor of Plaintiff is also improper because Defendant Poole is entitled to qualified immunity. "Determining whether qualified immunity applies involves a two-prong inquiry: whether the facts make out a violation of a constitutional right and whether

10

the right at issue was clearly established at the time of defendant's alleged misconduct." *Parker v. Burris*, No. 1:13CV488, 2015 WL 1474909, at *5 (M.D.N.C. Mar. 31, 2015) (unpublished), *report and recommendation adopted*, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015) *aff'd*, 623 Fed. App'x 82 (4th Cir. 2015); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Reeves v. Ransom*, No. 1:10CV56, 2014 WL 1323173, at *7 (M.D.N.C. Mar. 31, 2014) (unpublished) (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "The burden of proof and persuasion rests with the official asserting qualified immunity." *Id.*

Here, Plaintiff has not stated a claim for a constitutional violation. Therefore, Defendant Poole is entitled to qualified immunity. *See Parker*, 2015 WL 1474909, at *8 (finding that "the absence of evidence supporting a finding that a constitutional violation occurred satisfies the first prong of the qualified immunity analysis"); *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

V. Eleventh Amendment Immunity

Defendant Poole also asserts that Plaintiff is not entitled to recover monetary damages against Defendant Poole in her official capacity. (Docket Entry 52 at 16.) The Eleventh Amendment prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh

11

Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State is a named defendant, but also to actions against its departments, institutions, and agencies. Additionally, in North Carolina, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Green v. Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) (citation omitted). Indeed, "[w]here [Section 1983's] provisions allow for suit against a 'person,' and in suits for money damages, neither the state nor a state agency is deemed a 'person,' [thus] this claim cannot be maintained by plaintiff against [the State]." *Savage v. N. Carolina Dep't of Corr.*, No. 5:06-CV-171-FL, 2007 WL 2904182, at *5 (E.D.N.C. Sept. 29, 2007) (unpublished). Additionally, compensatory damages are unavailable in official capacity suits under § 1983. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Here, even if Plaintiff filed a suit against Defendant Poole in her official capacity it would be against the NCDPS and the State of North Carolina. *Green*, 203 N.C. App. 260 at 690. Neither has consented nor waived immunity; therefore, any monetary claims against Defendant Poole in her official capacity should be denied. *Kelly v. Maryland*, 267 F. App'x 209, 210 (4th Cir. 2008) (citation omitted) ("It is now well settled that a state cannot be sued under § 1983."); *see also Karrick v. N. Carolina Dep't of Pub. Safety*, No. 1:14-CV-00082-FDW, 2015 WL 4756963, at *3 (W.D.N.C. Aug. 12, 2015) (unpublished) (dismissing the North Carolina Department of Public Safety as "an arm of the State of North Carolina [that] enjoys immunity from a suit for monetary damages in a Section 1983 action based on the Eleventh Amendment of the U.S. Constitution").

## VI. Punitive Damages

Lastly, Defendant Poole asserts that Plaintiff's claim for summary judgment as to punitive damages should be denied. (Docket Entry 52 at 16-17.) The Court first notes that Plaintiff "is not entitled to monetary damages under § 1983 against Defendant [Poole] in [her] official capacity[y]." *Moneyhan v. Keller*, 563 F. App'x 256, 258 (4th Cir. 2014). Moreover, to the extent damages are available in an individual capacity, the conduct must be such that "involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Furthermore, "[t]he callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim[.]" *Id.* Having found no conduct of evil intent or reckless indifference, Plaintiff is not entitled to punitive damages.

## CONCLUSION

Based upon the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for summary judgment (Docket Entry 30) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

August 17, 2017
Durham, North Carolina